**J. L. LeFLORE et al., Plaintiffs-Appellants,**

v.

**James ROBINSON et al., Defendants-Appellees.**

**No. 28632.**

United States Court of Appeals, Fifth Circuit.

June 25, 1971.

**716**

Vernon Z. Crawford, Mobile, Ala., Jack Greenberg, Jonathan Shapiro, Charles L. Becton, New York City, for plaintiffs-appellants.

Alfred J. Tighe, Jr., Washington, D. C., Fred G. Collins, Mobile, Ala., William H. Bringham, City Atty., Francis A. Poggi, Jr., Asst. City Atty., T. Raymond Williams, Mobile, Ala., Allan R. Cameron, Mobile, Ala., Brice Rhyne, Charles S. Rhyne, Washington, D. C., for defendants-appellees.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

BY THE COURT:

This appeal was originally decided November 12, 1970. See 434 F.2d 933.

While petition for rehearing and for rehearing en banc filed by the defendants-appellees was pending before this Court, the Supreme Court on February 23, 1971 decided the cases of Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; and Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L. Ed.2d 792.

We considered that the relevance of those cases to the disposition of the petition for rehearing required that the parties be directed to file additional briefs. Upon consideration of those briefs and of the effect of Younger v. Harris and the other February 23, 1971 cases on this case it is now by the Court

Ordered: the judgment appealed from is vacated and set aside, the petition for rehearing is granted, our opinions of November 12, 1970 are withdrawn and this case is remanded to the district court for a full evidentiary hearing, findings of fact and conclusions of law in the light of the principles announced by the Supreme Court in the above cited cases.

GOLDBERG, Circuit Judge (specially concurring):

Though I concur without reservation in the granting of the petition for rehearing and the order concomitant therewith, nonetheless I feel compelled to make the following observations because of the important and sensitive nature of the issues involved.

In *Younger* and *its companion cases* the Supreme Court clarified what sever-

al commentators [1] felt that *Dombrowski* [2] and its progeny [3] had left unclear: the proper role of a federal district court when asked to interfere with a pending state prosecution. Stressing "the fundamental policy against federal interference with state criminal prosecutions," 401 U.S. at 46, 91 S.Ct. 746, at 751, 27 L.Ed.2d at 676, a majority of the Supreme Court held that a federal district court may not enjoin a pending state prosecution [4] unless the plaintiff can prove the existence of "irreparable injury" that is "both great and immediate." *Id.* Certain types of injury were found not to constitute the requisite "irreparable injury." Specifically, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecu-

tion" did not by themselves justify federal intervention. Instead, "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id.* at 46, 91 S.Ct. 746, at 751, 27 L.Ed.2d at 676–677. Moreover, despite intimations to the contrary in *Dombrowski*, where state proceedings are pending, the necessary "irreparable injury" is not established by the mere fact that a statute is facially overbroad or vague and thus "chills" protected expressive activity. To halt a pending state prosecution the plaintiff must show in addition "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." [5] *Id.* at 54, 91 S.Ct. 746, at 755, 27 L.Ed.2d at

1. E. g., C. Wright, Law of Federal Courts § 52, at 206–08 (1970); Maraist, Federal Injunctive Relief Against State Court Proceedings: The Significance of *Dombrowski*, 48 Tex.L.Rev. 535, 579; Note, The Federal Anti-Injunction Statute and Declaratory Judgments in Constitutional Adjudication, 83 Harv.L.Rev. 1870, at 1870 (1970).

2. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

3. E. g., Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182; Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444.

4. The Court made clear that in referring to "pending" state prosecutions, it had reference only to state proceedings initiated prior to the filing of the federal action. Younger v. Harris, supra, 401 U.S. at 41, 91 S.Ct. 746, at 749, 27 L.Ed.2d at 674 ("We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun"). The Court did not decide the propriety of federal relief when a state prosecution was begun after the federal suit was filed but was pending at the time of the federal hearing. That unanswered question assumes some importance, for it has been held that state proceedings are not pending within the intendment of the federal anti-injunction act, 28 U.S.C.A. § 2283, when filed subsequent to the federal action. Dombrowski v. Pfister, *supra*, 380 U.S. at 484 n. 2, 85 S.Ct. 1116; see Ex parte Young,

1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

5. Further elucidating the test for federal intervention, Justice Black for the majority in *Younger* wrote:

"There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment. For example, as long ago as the *Buck* case, *supra*, [Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416] we indicated:

'It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' 313 U.S. at 402, 61 S.Ct. 962.

Other unusual situations calling for federal intervention might also arise, but there is no point in our attempting now to specify what they might be." 401 U.S. at 53, 91 S.Ct. 746, at 755, 27 L.Ed.2d at 681. See also *id.* at 54, 91 S.Ct. 746, at 756, 27 L.Ed.2d at 682 (Stewart, J. and Harlan, J., concurring).

In a special concurring and dissenting opinion in *Perez*, Justice Brennan, joined by Justices Marshall and White, made the following comments:

"Bad faith harassment can, of course, take many forms, including arrests and prosecutions under valid statutes where there is no reasonable hope of obtaining conviction, see e. g., Cameron v. John-

679–681. In Samuels v. Mackell, *supra*, a companion case, the Court similarly held that where a state prosecution is pending, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." Accordingly, where an injunction would be impermissible, "declaratory relief should ordinarily be denied as well." 401 U.S. at 73, 91 S.Ct. 764, at 768, 27 L.Ed.2d at 693–694.

In our original opinion in the instant case we held that, despite the absence of an adequate appellate record wherein plaintiffs' allegations of bad faith harassment could be tested for factual reliability, we were obligated to examine the facial validity of the four Mobile, Alabama, ordinances in question. After declaring that three of those ordinances were unconstitutional on their faces,[6] we remanded the case to the district court (1) to determine the necessity and propriety of injunctive relief, and (2) to conduct an evidentiary hearing on plaintiffs' allegations of defendants' bad faith prosecution and repressive action. Since the subsequent decisions in the Supreme Court have profoundly altered the legal framework against which this case was decided, I agree that "respect for the law as the Supreme Court construes it" requires that our original opinion be vacated and that the case be remanded to the district court for reconsideration in light of the *Younger* series of cases. Livingston v. Garmire, 5 Cir. 1971, 442 F.2d 1322; see Byrne v. Karalexis, *supra*; Dyson v. Stein, *supra*. However, lest we extravagate the meaning of or overreact to the Supreme Court's February sextet, with its sixteen majority, concurring, and dissenting opinions, I think that it is important to note what that series of cases did not purport to decide.

Where pending state proceedings are concerned, the Supreme Court did not decide the independent force of the federal anti-injunction statute, 28 U.S.C.A. § 2283. In the words of Justice Black in *Younger:*

> "Because our holding rests on the absence of factors necessary under equitable principles to justify federal intervention, we have no occasion to consider whether 28 U.S.C.A. § 2283, which prohibits an injunction against state court proceedings 'except as expressly authorized by Act of Congress' would in and of itself be controlling under the circumstances of this case."

The municipal court prosecutions under sections 14–051, 14–7, and 14–13 were begun prior to the initiation of the federal suit.[7] Thus, if plaintiffs' allegations of "irreparable injury" are meritorious, the district court on remand must determine whether or not the anti-injunction statute is nevertheless an independent bar to federal relief. Several issues will be intertwined in this deter-

---

son, *supra*, [390 U.S.] at 621 [88 S.Ct. at 1340, 20 L.Ed.2d 182], and a pattern of discriminatory enforcement designed to inhibit the exercise of federal rights, see, e. g., Bailey v. Patterson, 323 F.2d 201 (CA 5 1963)." 401 U.S. at 118, 91 S.Ct. 674, at 693, 27 L.Ed. at 724–725 n. 11.

In *Dyson*, the Court stressed that the existence of such irreparable injury was a matter to be determined carefully under the facts of each case, 401 U.S. at 203, 91 S.Ct. 769, at 771, 27 L.Ed.2d at 784. For an example of a recent case decided subsequent to *Younger* which found sufficient irreparable injury to justify federal intervention, see Taylor v. City of Selma, S.D.Ala.1971, 327 F.Supp. 1191.

6. Those ordinances which we declared unconstitutional were Mobile, Alabama Code §§ 14–11, 14–13, and 14–051. Mobile, Alabama Code § 14–7 was declared to be facially constitutional.

7. Because the municipal proceedings were initiated prior to the present proceedings, the district court will be spared the necessity of considering whether a subsequent municipal suit which is pending at the time of the federal hearing either is subject to the equitable principles of *Younger* or, contrary to the holding in *Dombrowski*, is subject to the prohibitions of section 2283. See note 4 *supra*.

mination: (1) whether section 2283 is even applicable where bad faith enforcement is established;[8] (2) whether, if section 2283 is applicable, 42 U.S.C.A. § 1983 is an exception to its terms "expressly authorized by Act of Congress";[9] and (3) whether, if section 1983 is not an exception, a declaratory judgment falls without section 2283's proscription against the issuance of "injunctions."[10]

Perhaps most importantly, the Court did not determine the propriety of federal injunctive or declaratory relief against threatened state criminal prosecutions where no state proceedings are pending. As stated in his concurring opinion in *Younger*, Justice Stewart, joined by Justice Harlan, emphasized that "the Court today does not resolve the problems involved when a federal court is asked to give injunctive or declaratory relief from *future* state criminal prosecutions." 401 U.S. at 55, 91 S. Ct. 746, at 757, 27 L.Ed.2d at 681–682 (emphasis in original). Since there are no pending municipal prosecutions under section 14–11 of the Mobile ordinances, the district court, if it finds no evidence of bad faith, must still determine whether or not the "irreparable injury" envisioned by *Younger* is requisite to federal

injunctive relief against threatened prosecutions, and, if so, whether declaratory relief is nevertheless independently available.[11]

---

8. See C. Wright, supra, at 208; see generally Reaves & Golden, The Federal Anti-Injunction Statute in the Aftermath of Atlantic Coast Line Railroad, 5 Ga. L.Rev. 294 (1971).

9. See Younger v. Harris, supra, 401 U.S. at 54–56, 91 S.Ct. 746, at 756–757, 27 L.Ed.2d at 681–682 (Stewart and Harlan, concurring) (emphasizing that *Younger* decision leaves this issue open); id. at 58–65, 91 S.Ct. 746, at 760–764, 27 L.Ed.2d at 683–687 (Douglas, dissenting) (arguing that § 1983 an exception to § 2283). See also Honey v. Goodman, 6 Cir. 1970, 432 F.2d 333.

10. See Younger v. Harris, *supra*, 401 U.S. at 54–56, 91 S.Ct. 746, at 756–757, 27 L.Ed.2d at 681–682 (Stewart and Harlan, concurring) (emphasizing that *Younger* and companion cases leave this issue open); Perez v. Ledesma, *supra*, 401 U.S. at 129, 91 S.Ct. 674, at 699, 27 L.Ed.2d at

730–731 n. 18 (Brennan, White and Marshall, concurring in part and dissenting in part) (* * * "the Federal Declaratory Judgment Act plainly evinces a congressional intent that the statutory term 'injunction' in § 2283 not be read to include declaratory judgments"). See also 434 F.2d at 938–939.

11. Where no state prosecutions are pending the potential for federal-state friction is obviously lessened. Seizing upon this fact, and harking back to precedents beginning with the federal anti-injunction statute, including Ex parte Young, *supra*, and culminating in Zwickler v. Koota, Justice Brennan, joined by Justices White and Marshall, stated that declaratory relief would be available where no state prosecution is pending. Perez v. Ledesma, *supra*, 401 U.S. at 98–130, 91 S.Ct. 674, at 683–700, 27 L.Ed.2d at 713–732. A majority of the Court did not address this issue.